IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| ARRI NICOLE CHAVEZ, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-CV-257-MJT |
| | § | |
| JEFFERSON COUNTY, TEXAS, *et al.*, | § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION ON DEFENDANT
JEFFERSON COUNTY'S MOTION FOR SUMMARY JUDGMENT (Doc. #140)**

Pursuant to 28 U.S.C. §636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred to the undersigned Defendant Jefferson County's Motion for Summary Judgment (doc. #140) for consideration and disposition. (Doc. #164.) After review, the undersigned recommends granting the Motion in part and denying the Motion in part.

**I.    Background**

    A. Procedural History and Plaintiff's Claims

This case involves 42 U.S.C. §1983 claims against numerous defendants arising after a fellow inmate, who was allegedly "psychotic," attacked and severely injured Plaintiff Arri Nicole Chavez in the Jefferson County Correctional Facility ("JCCF"). (Doc. #1 at 4–5.) After motions to dismiss were granted, Jefferson County, Texas ("the County") is the remaining Defendant.[1]

---

[1] The undersigned notes that the court's March 21, 2023, Order dismissed Plaintiff's claims against Defendants Bradford Lowe Jr. and Brittany A. Banks without prejudice, but granted Plaintiff leave to file an amended complaint alleging "response time allegations" within thirty days of the date of that Order. (Doc. #105 at 24.) Plaintiff did not file an amended complaint within that timeframe. On March 28, 2023, the court entered a Second Amended Scheduling Order allowing Plaintiff to file an amended complaint without leave on or before October 24, 2023. (Doc. #108.) Plaintiff filed her Second Amended Complaint by that deadline, but kept allegations against various Defendants, including Lowe and Banks, "for completeness … so that she is not viewed as waiving or forfeiting any such claims in the event they are reinstated and/or in some manner later allowed." (Doc. #123 at 4.) Whether Plaintiff can now pursue "response time allegations" against Defendants Lowe and Banks is beyond the scope of the instant motion which the court referred to the undersigned.

(Doc. #105.) Plaintiff alleges that the County violated her Eighth and Fourteenth Amendment rights to reasonable medical care, to be protected, and not to be punished as a pretrial detainee. (Doc. #123 at 49.) On December 28, 2023, the County filed the instant Motion for Summary Judgment asking the court to dismiss all of Plaintiff's claims. (Doc. #140.) The County argues the following: (1) Plaintiff fails to identify a policymaker; (2) Plaintiff should have sued Jefferson County Sheriff Zena Stephens ("the Sheriff") in her official capacity rather than the County directly; (3) the Sheriff enacted the alleged policies, not the County, thus no policy of the County was the moving force behind the alleged constitutional violations; (4) the alleged policies are solely based on Plaintiff's injury; and (5) Plaintiff cannot show any evidence that she was incarcerated under conditions posing a substantial risk of serious harm and that the County, as opposed to the Sheriff, acted with deliberate indifference.[2] The County additionally requests the court to formally dismiss placeholder Defendants John Does 1-10. A response, reply, and sur-reply have also been filed. (Docs. #151, #153, #157.) The matter is now ripe for review.

### B. The County's Factual Assertions[3]

Perhaps because its Motion is primarily focused on whether Plaintiff has identified the proper party, Defendant County does not provide its own factual assertions, but recycles events as told in Plaintiff's Second Amended Complaint. According to the Motion, Plaintiff was arrested on a parole violation on July 16, 2020, and held in the JCCF as a pretrial detainee.[4] (Doc. #140 at

---

[2] In its reply brief, Defendant makes new arguments and attaches additional evidence further addressing the merits of Plaintiff's constitutional claims. (Doc. #153.) A "new argument cannot be raised for the first time in a reply brief." *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 850 F. App'x 213, 217 (5th Cir. 2021). The undersigned will, therefore, not consider novel arguments made in Defendant's reply brief.

[3] The Local Rules provide that a motion for summary judgment "must" contain a "Statement of Undisputed Material Facts." E.D. TEX. LOC. R. CV-56(a). Defendant County has not included such a statement. The County is admonished to review the Local Rules.

[4] The Eighth Amendment applies to incarcerated persons convicted of crimes, while the rights of pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. Courts in the Fifth Circuit generally consider an

1.) At or around the same time, Beaumont Police Officers made a welfare check at 4150 Maida Road. (*Id.*) There, witnesses explained to the officers that Andrea Shelton was threatening to strike them with a "pole." (*Id.*) Shelton then apparently struck her four-year-old daughter with the pole, and the officers detained and arrested her to prevent any further acts of violence. (*Id.*) The officers believed Shelton was suffering from a narcotics-induced psychotic episode because she was speaking to herself and another party who was not there. (*Id.* at 2.) The officers transported Shelton to the JCCF where she was booked and placed in a jail cell with Plaintiff. (*Id.*) At some point, an unprovoked Shelton violently attacked Plaintiff as she lay on her back in the cell. (*Id.*) Shelton kicked Plaintiff in the head multiple times, and grabbed her hair and slammed her into the concrete floor. (*Id.*)

In addition to reiterating Plaintiff's allegations, Defendant delineates the governance and legal structure of Jefferson County. Defendant notes that, under Texas law, a county has at least two policymakers: (1) a County Commissioners' Court that manages the County's "business affairs" and (2) the County Sheriff who makes policy "in the area of law enforcement." (*Id.* at 4–5.) Defendant alleges, and the record reflects, that County Judge Branick, the designated representative of Jefferson County, does not participate in setting jail and prison policy as that responsibility belongs to the County Sheriff. (*Id*. at 6.) Defendant also points to Judge Branick's assertion that "Jefferson County as such has no control over the jail" other than budgeting. (*Id.*) Defendant adds that "the Jefferson County Commissioners' Court has nothing to do with hiring,

---

individual arrested for a parole violation to be a convicted person. *Presley v. Sanders*, No. 1:14-CV-130-MTP, 2016 WL 6651375, at *2 (S.D. Miss. Nov. 10, 2016) (citing *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996)). Defendant solely relies on Plaintiff's Second Amended Complaint to allege that Plaintiff was arrested for a parole violation. (Doc. #140 at 1.) The Second Amended Complaint, however, is silent on why Plaintiff was arrested and does not allege Plaintiff was arrested for a parole violation. (Doc. #123 at 11.) If Defendant had argued that Plaintiff was a convicted person because she was arrested for a parole violation and attached proof to their Motion, then stricter Eighth Amendment standards for cruel and unusual punishment would likely apply here. *See infra* II.C. In the absence of such briefing and evidence, and for purposes of addressing the instant Motion, the undersigned will analyze Plaintiff's claims as they were pleaded: violations of the Fourteenth Amendment rights of a pretrial detainee.

training, discipline, promotion, or demotion of jailers." (*Id.* at 8.)  These facts lead the County to conclude that "it has no power or authority to adopt or object to [the Sheriff's] policies." (*Id.* at 12.)

        C. <u>Plaintiff's Factual Assertions</u>

In her response, Plaintiff provides a Statement of Facts further explaining relevant facts with supporting evidence. (Doc. #151 at 7–11.)  Plaintiff alleges the following: She was arrested on July 16, 2020, and brought to the JCCF. (*Id.* at 7.)  That day, Aaron Morris was serving as jail supervisor, and Brittani Banks, Sarah Cooper, Bradford Lowe, Lisa Marshall, and Paula Ogazi were all on duty as correctional officers. (*Id.*)  Plaintiff was booked around 8:30 p.m., changed into jail clothing, and placed in holding cell B-8 with another detainee who was subsequently released. (*Id.*)  Plaintiff's intake process was not fully complete when she was placed in the cell. (*Id.*)

At around 9:09 p.m., Beaumont Police Department Officers Alec Garcia, Ryan Barfield, and John Poole were dispatched to an apartment complex after individuals called to report a woman threatening to stab them with a pole and who had allegedly already struck a child with that pole. (*Id.* at 8.)  After speaking with witnesses and investigating the scene, Officers Garcia and Barfield determined they had probable cause to arrest the alleged assailant, Shelton, for crimes against a child. (*Id.*)  Officer Barfield described Shelton as "incoherent" and "not in a normal state of mind." (*Id.*)  He likened Shelton's state to a "narcotics-induced episode." (*Id.*)  Officer Garcia also observed that Shelton appeared to be suffering from "mental psychosis." (*Id.*)  Both officers noted that Shelton was speaking to herself and others who were not present. (*Id.*)  Rather than taking Shelton to seek medical attention, the officers transported her to the JCCF. (*Id.*)  Shelton

continued uttering nonsensical statements, such as claiming that her "baby's daddy is a demigod," during her transport. (*Id.*)

Once the officers transferred Shelton into the JCCF's custody, she was booked. (*Id.* at 8–9.) Jackie Loper, a CorrHealth nurse contracted to provide services at the jail asked Shelton a brief series of questions lasting about thirty seconds. (*Id.* at 9.) The officers did not inform the jailers that Shelton had been violent and erratic. (*Id.*) Without warning Plaintiff, Shelton was placed in cell B-8 according to jail policy. (*Id.* at 10.) Shelton soon thereafter kicked and stomped on Plaintiff over twenty times. (*Id.*) Plaintiff's skull and face were fractured, she lost consciousness, and her teeth were knocked into her stomach. (*Id.*) When he noticed the attack, Officer Lowe waited at the cell door for assistance. (*Id.* at 11.) Officers Lowe and Banks eventually entered the cell and pried Shelton off Plaintiff. (*Id.*) Plaintiff was transported for emergency neurosurgery and has no memory of the attack. (*Id.*) At the time of Shelton's attack on Plaintiff, the probable cause affidavit for Shelton was not fully completed and the Texas Department of Criminal Justice ("TDCJ") screening form did not have a signed completion time (nor did it until 5:51 a.m. the following day). (*Id.* at 9–11.)

## II.   Legal Standard

### A. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if its resolution would affect the outcome of the action and an issue is genuine only if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (citation and quotation marks omitted). A court may not make credibility determinations or weigh

the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). The court, however, is under no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials."); E.D. TEX. LOC. R. CV-56(a) ("The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.").

The moving party bears the initial burden to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655–56 (5th Cir. 1996) (citations omitted). The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992). "Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted." *Ragas*, 136 F.3d at 458 (citing *Celotex*, 477 U.S. at 321–25). The nonmoving party must then "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Id.* "[C]onclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence" do not suffice. *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023). The nonmovant's failure to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial results in a grant of summary judgment. *Celotex*, 477 U.S. at 322–23.

B. *Monell* Claims

A municipality cannot be held liable under a theory of *respondeat superior*. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Rather, it is "only when the execution of the government's policies or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks and ellipsis omitted) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). This theory of liability has since become known as a *Monell* claim. Because Defendant County assails the sufficiency of Plaintiff's Second Amended Complaint throughout the pending Motion for Summary Judgment, the undersigned finds it instructive to outline both the pleading and summary judgment standards for a *Monell* claim.

A sufficient *Monell* complaint identifies three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021) (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up)). If the claim proceeds to summary judgment, then a plaintiff "must demonstrate a dispute of fact as to three elements: that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017).

An "official policy or custom" is most clearly established through a formal directive officially adopted and promulgated by a policymaker. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *modified on reh'g on other grounds*, 739 F.2d 993 (5th Cir. 1984). However, "[w]hen an 'official policy' is not explicit, the 'persistent, widespread practice of

[public] officials or employees ... so common and well settled as to constitute a custom that fairly represents municipal policy' will suffice." *Id.* A governmental subunit's failure to train its employees amounting to "deliberate indifference" may also constitute an official policy. *Harris*, 489 U.S. at 389–90. In rare circumstances, an actionable policy or custom may be shown through a "single unconstitutional action" performed by a "final policymaker." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)).

### C. Unconstitutional Conditions of Confinement

As alleged, Plaintiff is a pretrial detainee.[5] Pretrial detainees may bring constitutional challenges against a municipality under two alternative theories: (1) a claim for "unconstitutional condition of confinement" or (2) an "episodic act or omission" claim. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc)). To hold a municipality liable for an unconstitutional condition of confinement, a plaintiff must establish "(1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive, (2) which was not reasonably related to a legitimate governmental objective, and (3) which caused the violation of a detainee's constitutional rights." *Montano v. Orange County*, 842 F.3d 865, 874 (5th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 534 (1979)). A pretrial detainee is not required to prove deliberate indifference. *Shepherd*, 591 F.3d at 454–55.

### D. Episodic Acts or Omissions

Municipalities may be alternatively liable for harms arising from a "particular act or omission of one or more officials." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). For episodic acts or omissions claims against a municipality, a plaintiff must show "(1) that the

---

[5] However, *see supra* I.B n.4.

municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Id.* at 634 (citing *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).

### III. Discussion

#### A. Claims Against Jefferson County

Defendant County's central argument that Plaintiff should have sued the Jefferson County Sheriff contradicts decades of well-established case law and is therefore meritless. Claims against a government employee in their official capacity "represent only another way of pleading an action" against their employer. *Monell*, 436 U.S. at 690 n.55. "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* … local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A] § 1983 claim against a government employee acting in his or her official capacity is the same as a suit brought against the governmental employer itself.").

The Fifth Circuit has clearly (and repeatedly) reasoned that "[c]laims under § 1983 may be brought against persons in their individual or official capacity, *or against a governmental entity*." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'r of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)) (emphasis added). In fact, where a government employee is sued in her official capacity alongside the governmental body, claims against the employee are "subsumed" into the claims against the employer. *Id.* at 395–96; *see also Chuttoo v. Horton*, 627 F. Supp. 3d 655, 671 (E.D. Tex. 2022) (collecting cases finding official-capacity claims duplicative of claims against municipal or county government).

Instantly, the County concedes that, under Texas law, it has at least two policymakers for the purposes of *Monell* liability: the Jefferson County Commissioners' Court and the Jefferson County Sheriff. (Doc. #140 at 4.) Consistent with well-established law, an official-capacity suit brought against the Sheriff, or any one of her subordinates, would merely be an alternative to suing Jefferson County itself, or possibly amount to surplusage.

Judge Branick claims in his deposition that as a Jefferson County Judge he has nothing to do with the operations of the JCCF, and therefore "Jefferson County as such has no control over the jail" and cannot be sued for allegedly unconstitutional policies or customs. (*Id.*) Defendant functionally argues that a suit against Jefferson County served on Judge Branick is only a suit against that part of Jefferson County controlled by the County Commissioners' Court, and not a suit against that which is controlled by the Sheriff. But Defendant concedes that a county sheriff is considered a policymaker for *a county*. (*Id.* at 18–19); *see Graham v. El Paso County*, No. EP-21-CV-00066-FM, 2021 WL 2792424, at *2 (W.D. Tex. May 3, 2021).

Defendant's confusion may lay in the Federal Rules of Civil Procedure's mandate that a plaintiff serve a county "in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FED. R. CIV. P. 4(j)(2)(B). The relevant Texas law requires service on the county judge. TEX. CIV. PRAC. & REM. CODE §17.024(a); *see, e.g.*, *Graham*, 2021 WL 2792424, at *2. Indeed, Defendant even acknowledges that County Judge Branick is the designated representative of Jefferson County. (Doc. #4 at 6.) It naturally follows that a suit against Jefferson County must be served on Judge Branick in accordance with applicable state law.

Thus, the issue is relatively straightforward: The Jefferson County Sheriff is a policymaker for Jefferson County. Where a county policymaker allegedly enacted unconstitutional policies or customs, a plaintiff need not sue the policymaker, but may sue the county directly. To sue a county

in federal court in Texas, a plaintiff must serve the county judge, irrespective of whether that individual is the policymaker implicated by the lawsuit. With that settled, the undersigned will now address Defendant's specific arguments, most of which implicate the analysis above.

### i. Identity of the Policymaker is Not in Dispute

First, Defendant County argues that Plaintiff "has failed to identify any policymaker in their second amended complaint." (Doc. #140 at 3.) According to the Fifth Circuit, "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). Plaintiff's Second Amended Complaint implicates the "County's chief policymakers" and alleges that County policies are at issue. (Doc. #123 at 32.) Accordingly, the undersigned finds no latent pleading issue regarding the identity of the policymaker.

Nor is there a factual dispute as to the identity of the policymaker for the purposes of summary judgment. The parties agree that the appropriate policymaker is the Jefferson County Sheriff. (Docs. #140 at 7, #151 at 18–19.) As a matter of law, the Sheriff is the relevant policymaker. *Robinson v. Hunt County*, 921 F.3d 440, 448 (5th Cir. 2019). Because the identity of the policymaker is not in factual dispute, Defendant is not entitled to judgment as a matter of law. The instant Motion should therefore be denied with respect to this argument.

### ii. Plaintiff Did Not Have to Sue the Sheriff

The County next argues that it cannot be sued because the Sheriff was never a party to the instant action. (Doc. #140 at 5–8.) Defendant redeploys Judge Branick's deposition testimony to bisect itself into parts separately controlled by the County Commissioners' Court and the Sheriff. Under this theory, Plaintiff only sued that part controlled by the Commissioners' Court and not the

11

Sheriff by failing to name her as a party. For the reasons discussed above, this is inconsistent with current law and Plaintiff permissibly sued Jefferson County directly.

### iii. *Jefferson County is a Correct Party*

The County's related argument that it is not a proper party is similarly unavailing. Defendant selectively relies on the United States Supreme Court's statement in *Monell* "that a local government may not be sued under 1983 for an injury inflicted solely by its employees or agents." (*Id.* at 8–9) (quoting *Monell*, 436 U.S. at 658). This quote, however, refers to acts employees took in their *individual* capacities. The opinion's very next line concludes that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Monell*, 436 U.S. at 658. Here, Plaintiff's claims against Defendant County are based on alleged policies and customs.

Defendant also argues that it is the wrong party because it "had no notice that all Plaintiff's claims were against Sheriff Stephens and not against Jefferson County." (Doc. #140 at 10.) Once more, official-capacity suits brought against the Sheriff are just another way of levying claims against the County. Defendant cites *Brandon v. Holt*, which reasoned that *official*-capacity suits bind the government employer when "the public entity received notice and an opportunity to respond." 469 U.S. 464, 471–72 (1985). Because Plaintiff brought her action against the *County* directly, *Brandon* does not support Defendant's argument.

### iv. *Policies, Practices, and Customs, and Alleged Constitutional Violations*

The County's final two arguments are intertwined, so the undersigned will analyze them together. First, the County argues that Plaintiff fails to identify a policy, practice, or custom of

12

Jefferson County.[6] (Doc. #140 at 10–14.) This argument has two subparts: (1) the alleged policies, practices, or customs are attributable to the Sheriff, not Jefferson County itself, meaning *County* policies, practices, or customs were not the moving force behind the alleged violation of Plaintiff's constitutional rights; and (2) Plaintiff fails to identify any explicit written policy or identify other incidents establishing a *de facto* policy, practice, or custom.  Second, the County contends that Plaintiff fails to establish a violation of a constitutional right because she "cannot show any evidence that she was incarcerated under conditions posing a substantial risk of serious harm and that Jefferson County acted with deliberate indifference." (*Id.* at 15.)

For clarity, Plaintiff brings a *Monell* claim against Defendant County, which requires her to prove that (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, was (3) the moving force behind an alleged constitutional violation. *See supra* II.B. A fair reading of the Second Amended Complaint reveals that Plaintiff only pleads unconstitutional conditions of confinement claims. The undersigned cannot locate any portion of the Second Amended Complaint clearly articulating an episodic acts or omissions claim against the County. The "threadbare recitals," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), of "and/or episodic acts or omissions" are not sufficient. (Doc. #123 at 10, 32, 34, 35, 49, 50.) This is likely the explanation for why Defendant did not challenge an episodic acts or omissions claim in its Motion. Moreover, even if Plaintiff buried such a claim somewhere in her pleading, the undersigned does not know how such a claim could survive when the court has already found that the individual jail officers did not act with subjective deliberate indifference. *See* (doc. #105 at 9–20); *Sanchez v. Young County, Texas*, 866 F.3d 274, 280 (5th Cir. 2017) (reasoning that plaintiff's municipal episodic acts or omissions claim did not survive summary judgment because, in part,

---

[6] A purported pleading failure to identify a policy for a *Monell* claim would typically be raised in a Rule 12(b)(6) or Rule 12(c) motion.

13

she did not demonstrate County employees' subjective deliberate indifference); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) (concluding that municipal episodic acts or omissions claim failed summary judgment because plaintiff "cannot state a § 1983 claim against any of these three [jailer] defendants").

*a. Unconstitutional Conditions of Confinement Claims*

Recall that a successful unconstitutional conditions of confinement claim at this stage demonstrates: (1) a rule, restriction, intended condition or practice, or a jail official's sufficiently extended or pervasive acts or omissions, (2) which was not reasonably related to a legitimate governmental objective, and (3) which caused the violation of a detainee's constitutional rights. *Montano*, 842 F.3d at 874 (citing *Bell*, 441 U.S. at 534). At the outset, the undersigned emphasizes that Defendant does not move for summary judgment on the grounds that Plaintiff's alleged policies are not reasonably related to a legitimate governmental objective, or that these alleged policies are not cognizable unconstitutional conditions of confinement claims under current law. *See generally* (Doc. #140.) Arguments not raised in Defendant's Motion need not be addressed by the court. *Toccoa, Ltd. v. N. Am. Roofing Servs.*, LLC, No. 1:21-CV-00313, 2023 WL 4106440, at *4 (E.D. Tex. June 21, 2023) (collecting cases).

Instead, Defendant first argues that the alleged policies are not those of the County, attempting to shoehorn the "Sheriff-versus-County" paradigm into the causal link element of Plaintiff's claims, and thus fails for the reasons discussed above. Second, Defendant mistakenly claims that Plaintiff fails to identify a policy, practice, or custom. Plaintiff's Second Amended Complaint identifies nine policies, which Defendant lists in its Motion. (Doc. #140 at 11–12.) Defendant does not, however, identify in its Motion how each alleged policy is challenged except

in generalized terms—these are not the policies of the County, but instead the sheriff; there are no written policies; the policies are based on a single incident. (*Id.* at 12–15.).

Plaintiff, in turn, attempts to show that a genuine dispute of material fact exists on the policies she alleges to be the official policies, practices, and customs of the County, but she categorizes them differently than how they were articulated in the Second Amended Complaint. *Compare* (Doc. #151 at 18–28), *with* (Doc. 123 at 34–36.) Plaintiff does offer some evidence of TCSJ violations and the consistent testimony of jail officials, all of which could establish a genuine dispute of material fact for trial as to the existence of a policy. However, in some instances Plaintiff does not make arguments or offer evidence of a given policy, practice, or custom, apparently abandoning certain policies alleged in her Second Amended Complaint (which of course, she is free to do.)

In sum, a clear and concise ruling on Defendant's Motion for Summary Judgment, assisting the court and the parties in understanding what, if any, claims should proceed to trial is complicated by the fact that Defendant has not clearly challenged all the elements of an unconstitutional conditions of confinement claim, and thus Plaintiff has not responded in kind. Likewise, the issue of Plaintiff's status as either a pretrial detainee or detained parole is critical to the appropriate standard to be applied.

Thus, because of the need for clarity with respect to several unresolved issues, the undersigned finds that the interests of judicial economy are best served by Defendant filing a second motion for summary judgment. The motion needs to address the following issues:

(1) whether Plaintiff was arrested for a parole violation (supported by permissible evidence) and, if so, the resultant constitutional framework to be applied; and

(2) which of the alleged policies articulated in Plaintiff's Second Amended Complaint Defendant is challenging and, for each challenged policy, the elements for which Plaintiff cannot establish a genuine dispute of material fact.

15

The new motion should also include a proper Statement of the Issues to be Decided,[7] as well as a Statement of Undisputed Materials Facts. E.D. TEX. LOC. R. CV-7(a)(1), 47(a), 56(a). This will further allow Plaintiff to "identify specific evidence in the record and to articulate the precise manner in which that evidence supports" her claims. *Ragas*, 136 F.3d at 458.

In her response, Plaintiff must bring forth proper summary judgment evidence supporting her unconstitutional conditions of confinement claims as to any challenged policy, and for every challenged element. Both parties are advised to review Local Rule CV-7(a)(3)'s additional limitations on subsequent motions for summary judgment. E.D. TEX. LOC. R. CV-7(a)(3). Accordingly, Defendant's current Motion should be denied as to Plaintiff's unconstitutional conditions of confinement claims brought pursuant to *Monell*, but the court should grant Defendant leave to file a second motion for summary judgment as articulated above.

### b. Episodic Acts or Omissions Claim

As explained *supra*, the undersigned does not believe Plaintiff's Second Amended Complaint asserts an episodic acts or omissions claim against the County. Additionally, even giving the Plaintiff's pleading a most liberal reading, such claims cannot proceed.

Plaintiff's response argues that she "presents ample evidence that the County and County employees were deliberately indifferent." (Doc. #151 at 33.) The only citation to evidence in this section of the response, however, is to TCJS standards suggesting that policymaker-Sheriff was deliberately indifferent. (Docs. #151 at 34, #151-1 at 293–94.) There is no evidence cited in support of the proposition that individual employees were deliberately indifferent—a required element to hold the County liable under an episodic acts or omissions theory. To the extent Plaintiff relies on the 374 pages of exhibits attached to her response, it is not the court's

---

[7] Whether a party is entitled to summary judgment as a matter of law is not an adequate framing of the issue(s). The court can deduce that by virtue of the motion being filed.

16

responsibility to sort through the record and determine what constitutes evidence of an individual employee's alleged deliberate indifference. *Ragas*, 136 F.3d at 458; FED. R. CIV. P. 56(c)(3); E.D. TEX. LOC. R. CV-56(a). The undersigned, therefore, finds that Plaintiff has not provided sufficient evidence to raise a genuine issue of material fact as to whether an individual County employee acted with deliberate indifference. Moreover, given that the court has already determined none of the individual jailers acted with subjective deliberate indifference, Plaintiff's attempt to attribute the jailers' actions to the policies of the County are meritless. *See supra* III.A.iv. Accordingly, any alleged episodic acts or omission claim against the County should be dismissed.

### B. Claims Against Defendants John Does 1-10

Lastly, Defendant County motions the court to dismiss all claims against placeholder Defendants John Does 1-10. (Doc. #140 at 15.) A prior order from the court left only the claims against Defendant Jefferson County. (Doc. #105 at 25.) Plaintiff also concedes that she has not prosecuted claims against these Defendants. (Doc. #151 at 34 n.10.) Given that there are no pending claims against John Does 1-10, the court should deny this part of the Motion as moot.

### IV. Conclusion

Defendant Jefferson County is a proper party to Plaintiff's unconstitutional conditions of confinement claims. Due to a lack of clarity in the pleadings and the briefing, the undersigned finds that the court should grant Defendant leave to file a second motion for summary judgment, which will better ventilate unresolved issues before the court and illuminate the road ahead. As stated, the new motion needs to address and include the following:

(1) whether Plaintiff was arrested for a parole violation (supported by permissible evidence) and, if so, and the resultant constitutional framework to be applied;

(2) which of the alleged policies articulated in Plaintiff's Second Amended Complaint Defendant is challenging and, for each challenged policy, each element of an

>> unconstitutional condition of confinement claim on which there is no genuine dispute of material fact;
>
> (3) a proper Statement of the Issues to be Decided; and
>
> (4) a proper Statement of Undisputed Material Facts.

In turn, Plaintiff must respond with summary judgment evidence as to each element of her unconstitutional conditions of confinement claims under the appropriate standards. Defendant's Motion (doc. #140), therefore, as to Plaintiff's unconstitutional condition of confinement claims should be **DENIED**.

The undersigned also finds that Plaintiff has not alleged an episodic acts or omissions claim, but even if she had, she has not met her burden to show that her episodic acts or omissions claim survives summary judgment. This claim should be **DISMISSED**.

Finally, the undersigned finds there are no pending claims against John Does 1-10. Defendant County's request for the court to dismiss John Does 1-10 should be **DENIED** as moot.

## V.     Recommendation

For the foregoing reasons, the undersigned recommends that Defendant Jefferson County's Motion for Summary Judgment (doc. #140) be **GRANTED in part** and **DENIED in part** as is consistent with this Report and Recommendation.

## VI.    Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. §636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate

judge is not specific.  Without leave of court, **objections are limited to eight (8) pages**.  E.D. TEX. LOC. R. CV-72(c).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 19th day of August, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE